IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES BOSTIC, :
        Petitioner, :
 :   3:19-cv-1279
v. :
 :   Hon. John E. Jones III
DAVID J. EBBERT, :
        Respondent. :

## MEMORANDUM[1]

### July 28, 2020

Presently before the Court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241, filed by Petitioner James Bostic ("Bostic"), a federal inmate in the custody of the Federal Bureau of Prisons ("BOP") housed at the United States Penitentiary at Lewisburg, Pennsylvania. He alleges that his due process rights were violated in the context of a disciplinary proceeding.

The petition is ripe for disposition and, for the reasons that follow, will be denied.

**I.**    **BACKGROUND**

On December 8, 2016, while incarcerated at the Satellite Camp at the Federal Correctional Institution at Butner, North Carolina, Bostic received an Incident Report charging him with Prohibited Act Code 108, Possession, Manufacture, or Introduction

---

[1] This matter has been reassigned due to the death of the Honorable James M. Munley.

of a Hazardous Tool; Cellular Phone.  The reporting officer described the incident as follows:

> On Thursday, December 8, 2016, I entered into Hatteras West Cube 22 at approximately 1:20 a.m.  Inmate Bostic, James #44590-037 who is assigned to the lower bunk was lying awake on his stomach.  I ordered inmate Bostic to get out of bed and submit to a pat search.  [He] was acting in a nervous manner.  I [him] moving his hands under the blanket.  I ordered [him] again to stand, at this command he complied.  [He] still attempted to conceal what was in his hands.  I ordered [him] to hand over what was in his hands.  He then handed over a white Samsung smartphone.  Inmate Bostic was then escorted out of Hatteras West without any incident.  The FCI Lieutenant's Office was notified.  A visual search was performed with no other contraband found.

(Doc. 9-1, p. 13).  On that same date, he was advised of his rights, which included a right to remain silent at all stages of the proceeding, and indicated that he understood his rights and offered no statement.  (*Id.* at 14).

On December 15, 2016, at the UDC hearing, Bostic affirmed that he understood his rights and, when asked if the smartphone was in his possession, he responded "Yes." (*Id.* at 13).  The UDC referred the matter to the DHO due to the severity of the incident and recommended loss of good conduct time and loss of various privileges.  (*Id*).

The disciplinary hearing convened on January 5, 2017.  (*Id.* at 10).  Bostic declined a staff representative, waived his right to call witnesses, had no documentary evidence to present, and indicated that he understood his rights.  (*Id.*).   The DHO read the charges in the incident report and, in response to the DHO's question concerning the veracity of the information, Bostic responded that "he found the cellphone while

2

walking on the track in [sic] outside recreation a couple of days prior to the incident, and used it a few times to call his family about some issues they have going on in their life." (*Id.*).

In finding that Bostic committed Prohibited Act 108, as charged, the DHO relied on the incident report, Bostic's admission, a chain of custody form, and photographs of the cellular phone. (*Id.* at 11). In sanctioning him with the disallowance of forty days of good conduct time, forty-five days of disciplinary segregation, and the loss of various privileges, the DHO stated as follows:

> The action on the part of any inmate to possess, manufacture or introduce a hazardous tool into any correctional institution threatens the safety and security, not only of the inmate involved, but that of the entire institution. In the past, inmates have used hazardous tools to effect escapes, or to seriously injure other inmates or staff members. A cellular telephone falls under the classification of hazardous tools, as it can be used to arrange rendezvous for escapes, especially from open institutions such as a satellite camp, and can be used to arrange contraband introductions, and further allow the inmate to make contact with individuals outside the institution without the knowledge of staff for illegal or illicit purposes and will not be tolerated.

(*Id.* at 12).

On February 10, 2017, Bostic received a copy of the DHO report. (*Id.*). He properly exhausted the BOP's Administrative Remedy procedure. (Doc. 1, pp. 9-21, 31).

There was a parallel investigation conducted by the Special Investigative Service ("SIS"). The SIS investigation concluded on March 2, 2017, at which time Bostic was

3

again advised of his rights; he declined to make a statement. (*Id.* at 6, 38). On March 28, 2017, he was charged in the United States District Court for the Eastern District of North Carolina, Western Division, in a one count indictment for knowingly possessing a prohibited object in violation of 18 U.S.C. §§ 1791(a)(2) and (b)(4). (*Id.* at 46). On July 14, 2017, he pleaded guilty to violating 18 U.S.C. §§ 1791(a)(2) and (b)(4) and was sentenced to a consecutive three month term of imprisonment. *See* electronic docket, https://ecf.nced.uscourts.gov, *United States of America v. James Bostic*, 5:17-CR-93-1KS, Doc. 32.

Bostic filed the instant petition on July 23, 2019, challenging the disciplinary process on two grounds. In his first ground he contends that the BOP's failure to suspend the disciplinary hearing proceedings during the SIS investigation violated BOP policy 541.5(b) and 28 C.F.R. § 541.7(c). In his second ground, he contends that the BOP failed to give him a timely waiver of his right to remain silent, which resulted in him making an incriminating statement in violation of his Fifth Amendment right against self-incrimination. (Doc. 1, p. 6).

He is seeking expungement of the Incident Report and restoration of forty days of good conduct time. (*Id.* at 7).

## II.     DISCUSSION

The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V.  Federal inmates possess a liberty interest in good conduct time.  *See Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991). Therefore, Bostic's claim, that his due process rights were violated in the context of the disciplinary hearing process, and that these violations resulted in a loss of good conduct time, is properly the subject of this habeas petition because it directly impacts the duration of his confinement. *See Sandin v. Conner*, 515 U.S. 472 (1995).

The BOP disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541 through 541.8 (2011). These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules.  The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.5.  Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.5(b).  "When it appears likely that the incident may involve criminal prosecution, the investigating officer suspends the investigation.  Staff may not question the inmate until the FBI or other investigative agency releases the incident report for administrative processing.  The incident report should then be

delivered to the inmate by the end of the next business day. The time frame for processing the Incident report is suspended until it is released for processing." (Doc. 9-1, p. 35). When an investigator asks for an inmate statement, the inmate "may give an explanation of the incident, request any witnesses be interviewed, or request that other evidence be obtained and reviewed. However, the staff investigation of the incident report may be suspended before requesting your statement if it is being investigated for possible criminal prosecution." (*Id.*).

Following the investigation, the matter is then referred to the Unit Disciplinary Committee ("UDC") for an initial hearing pursuant to 28 C.F.R. § 541.7. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. *Id.* If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a Disciplinary Hearing Officer ("DHO") for a hearing. *Id.* Greatest Severity category offenses carry a possible sanction of, *inter alia*, loss of good conduct time credits. 28 C.F.R. § 541.3. In the event that a matter is referred for a hearing, the Warden is required to give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing and offer the inmate a full time staff member to represent him at the DHO hearing. *Id.* at § 541.8 (c) and (d).

At the DHO hearing, the inmate is "entitled to make a statement and present documentary evidence" and has the right to submit names of requested witnesses and

have them called to testify and to present documents. *Id.* at § 541.8(f). The DHO shall "call witnesses who have information directly relevant to the charge[s] and who are reasonably available." *Id.* § 541.8(f)(2). The DHO need not call repetitive witnesses or adverse witnesses. *Id.* § 541.8(f)(3). The inmate has the right to be present throughout the DHO hearing except during "DHO deliberations or when [his] presence would jeopardize institution security, at the DHO's discretion." *Id.* § 541.8(e). The DHO must "consider all evidence presented during the hearing." *Id.* § 541.8(f). "The DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence." *Id.* The DHO has the authority to dismiss any charge, find a prohibited act was committed, and impose available sanctions. *Id.* at § 541.8. The DHO must prepare a record of the proceedings sufficient to document the advisement of inmate rights, DHO's findings, "DHO's decision", specific "evidence relied on by the DHO" and must identify the reasons for the sanctions imposed. *Id.* at § 541.8(f)(2). A copy must be delivered to the inmate. *Id.*

    **A.    Investigation**

In his first ground Bostic contends that the BOP's failure to suspend the disciplinary hearing proceedings during the SIS investigation violated BOP policy 541.5(b) and 28 C.F.R. § 541.7(c). (Doc. 1, p. 6). However, it is clear from the above

language that, in the event that a criminal investigation may commence, suspension of an investigation into the conduct alleged in the incident report is not mandatory.[2]

### B.  UDC and DHO Proceedings

When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive certain due process protections: 1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; 2) the opportunity to call witnesses and present documentary evidence when consistent with institutional and correctional goals; 3) assistance in presenting a defense if the inmate is illiterate; 4) an impartial tribunal; and 5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action.  *See Wolff*, 418 U.S. at 564.

Further, the decision of the DHO will be upheld if there is "some evidence" to support the decision.  *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); s*ee also Young*, 926 at 1402-03 (applying *Hill* standard to federal prisoner due process challenge to prison disciplinary proceedings).  The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  *Id.* at 455.  Under *Hill*, judicial review of a prison disciplinary

---

[2] Respondent notes that 28 C.F.R. 541.14(b)(1), which mandated suspension of the investigation of the incident report, was eliminated.  The current regulation, 28 C.F.R. 541(b)(2), changed in 2011 to the

decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. *Id.* at 457; *see also* 28 C.F.R. § 541.8(f) (requiring that the DHO's decision be based upon at least some facts and, if there is conflicting evidence, to be based on the greater weight of the evidence).

It is clear from the record that Bostic received adequate and timely written notice before both the UDC and DHO proceedings. He was again notified of his right to remain silent when the DHO hearing commenced. He was also afforded the opportunity to call witnesses and present documentary evidence. His hearing was held before an impartial DHO, and he was provided with a written copy of the DHO's decision, which recited the evidence relied upon and the rationale behind the disciplinary sanctions. Specifically, in arriving at a finding of guilt, the DHO considered the eyewitness account of the staff member who authored the incident report and considered Bostic's admission that he possessed the cell phone. (Doc. 9-1, p. 11). The DHO also took into account the report detailing the chain of custody of the phone and photographs of the phone. (*Id.*). It is clear from the record that Bostic was afforded all due process protections required by *Wolff* and that the DHO's conclusion, that he committed Prohibited Act Code 108, Possession of a Hazardous Tool (electronic device), has some evidentiary support.

Bostic specifically seeks to have the incident report expunged and his good

conduct time restored because he was not given a "timely waiver of rights" during the disciplinary proceedings in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), which resulted in him making incriminating statements that were then used against him during the criminal investigation. (Doc. 1, p. 6). Even if true, this does not entitle Bostic to the relief he seeks. "Prison disciplinary hearings are not criminal proceedings." *Baxter v. Palmigiano*, 425 U.S. 308, 316 (1976). Therefore, "the full panoply of rights due a defendant in [criminal] proceedings does not apply." *Wolff*, 418 U.S. at 556 (1974). The advisements of rights read to him were sufficient for purposes of the disciplinary proceedings.

It has been held that any statement made by an inmate or detainee at the disciplinary hearing may not be used against him in a subsequent criminal proceeding absent the benefit of *Miranda* warnings. *See United States v. Redfield*, 402 F.2d 454 (4th Cir.1968) (per curiam) (finding an inmate's incriminating statement made at a prison disciplinary hearing without the benefit of

*Miranda* warnings inadmissible at trial); *see also Mathis v. United States*, 391 U.S. 1 (1968) (finding incriminating statements made by a prisoner to an Internal Revenue Service agent during a routine tax investigation inadmissible in a subsequent criminal proceeding because a proper *Miranda* advisement was not given).  *See also, United States v. Boyce*, No. CR 2014-00029, 2015 WL 856943, at *4 (D.V.I. Feb. 26, 2015), citing *People v. Stamus*, 902 P.2d 936, 938 (Colo.App.1995) (holding that "the defendant was entitled to have been advised of the full panoply of rights pursuant to *Miranda* before he could voluntarily waive those rights [at the disciplinary hearing] and make incriminating statements that would be admissible in the subsequent criminal proceedings"); *Grant v. State*, 270 S.E.2d 42, 43 (Ga.Ct.App.1980) (holding that a plea of guilty entered at a prison disciplinary hearing was inadmissible at a subsequent criminal trial absent a Miranda warning at the disciplinary hearing).  Bostic's remedy, therefore, if any, was to file, in his criminal case, a motion to suppress the statements made during the disciplinary proceeding.

Because it is clear that Bostic received all the process he was due during the disciplinary proceedings, we conclude that he is not entitled to relief on this claim.

### III.    CONCLUSION

Based on the foregoing discussion, the petition for writ of habeas corpus will be denied.  A separate Order will enter.

s/ John E. Jones III
John E. Jones III, Chief Judge
United States District Court
Middle District of Pennsylvania